Good morning, Your Honor. May it please the Court, Jia Kim appearing on behalf of Appellant Gregory Monroe. This Court and the Supreme Court have both explained that supervised release revocation proceedings involve a two-step process. The first step is wholly retrospective and factual, determining what actually happened. And the second step is, by contrast, predictive and discretionary, determining whether supervised release should in fact be revoked and if so, what sentence should be imposed. And in Mr. Monroe's case, the District Court's errors so infected both phases of this process that we are asking this Court to vacate the judgment and remand for proceedings before a new judge. First, I'd like to address the insufficiency as to the failure to enter residential substance abuse treatment as charged in the violation petition, which is the allegation before this Court today and before the District Court. And there are allegations as to four specific days, February 23rd, 26th, and 28th, and also in reverse order. Which ones did the District Court use as a basis for revoking? He used the first two. Okay, so let's discuss those. Okay, yes. So, starting with the second of those, February 26th, it's undisputed by the government there was no evidence that the probation officer ordered Mr. Monroe to report on that day. So we're down to February 23rd. Yes, and that was the first of these four, the series of four dates. And as to that date, there are only a few facts adduced. The first was that he was ordered to report on that day. The second, the probation officer testified that he had spoken to a nurse at Urgent Care, that Mr. Monroe had checked himself in that day, and that the nurse... As a factual matter, he did not check in. The reason why he didn't check in is a different issue, but as a factual matter, he did not check in. He did present himself at Phoenix House later, but he was not admitted. So he did present himself at the facility, but he was not admitted due to the lateness of the hour. He did not check in. So, as a factual matter, the finding was correct that he did not check in to Phoenix House. The issue is, was his failure to check in excusable or excused? Yes, I would say there's two elements. One is whether it's because this court has construed supervised release conditions to contain a culpable mens rea requirement. And... What case says that violation of a supervised release condition must be willful? What case says that? It says it requires a culpable mens rea, and that's U.S. v. Vega, which I believe Judge Vea authored. In that case, it was a gang... She's extremely persuasive. A gang condition, and that it had to be knowing association versus inadvertent. But here... Do you have a case that more closely mirrors the facts of this case, a failure to report? No, Your Honor, but I would point out that this condition, unlike the gang condition, is not self-executing in that a person on supervised release cannot just present himself at a rehab facility and say, I'm checking in for substance abuse treatment. It has to be approved by the probation officer. But it had already been approved. It had been approved, but the compliance also presupposes a facility, the existence of a facility that's ready, willing, and able to accept him as a patient. And he did present himself three times. The first, he was late, but he was given a chance to come back. On the 23rd? We're talking about the 23rd. The 23rd. He was told to come back on the 25th, and he was under the influence, and they wouldn't admit him. And he was told to come back on the 27th. Do you think that was a willful act for him to be under the influence or no? I would say it was probably a knowing act. There isn't evidence in the record. However, it's not clear that he knew that he would not be admitted to substance abuse treatment if he was, you know, showed signs of substance abuse. And I think, but I think the last one is particularly important because on that day, which was his last clear shot to enter the facility, the testimony showed that he wasn't late, he wasn't under the influence, but he wasn't accepted due to his mental health needs. And this did not seem to be what, something the facility was willing to accept him as a patient, at least on that last date and by inference on the preceding dates. And it was well known to the parties and... Not by inference on the preceding dates, because that issue didn't arise for the preceding dates. No, but he never got that far in the process. He was, you know, not admitted for other reasons prior to that for the preceding dates. But on the last date, when he complied with, you know, the requirements they had given, they said, we can't, you know, deal with his mental health needs, which was an ongoing concern in this record. Now, so would you point me to the language in Vega you're relying upon to support your argument that there's a mens rea component to this? If I may. So it's at 545 F. 3rd at 750. We construe condition 11 consistent with well-established jurisprudence under which we presume prohibited criminal acts require an element of mens rea. That's a criminal act, but not... We're not talking about a criminal act here. Right. But this is how they are... The court is construing a condition of supervised release, which is association with gang members in that case, which in itself is not a criminal act. But they're saying that there has to be something more than inadvertent or it has to be within your control to some extent. And I think our... I think the reason that language is in there, because the condition said that the defendant shall not associate with any criminal street gang. Do you think that makes a difference? I would say no, Your Honor. I still think that in itself is not a criminal act. But the question is whether a person can be violated for an unknowing or unwitting violation. And here, I can see the conditions are different in kind, but if the probation officer has directed Mr. Monroe to report to a facility that doesn't handle people with, you know, his degree of mental health issues and he's not admitted for that reason... Well, but that came after the fact. The 23rd, that issue was not there when he... That was not... It didn't come to that point on the 23rd. And let me ask you if you have... Did you have a question? Oh, go ahead. Okay. Keep... Hold that thought. So do you have a case that does not involve a prohibition of associating with a criminal gang that has the mens rea requirement? No, Your Honor. However, I would also argue in the alternative that even if there is technically sufficient evidence that he violated the mitigating circumstance of whether he went to urgent care and the facts surrounding that visit and the following visits go to the exercise of his discretion, the district court's discretion in revoking supervised release, which goes to the second phase. So even if it's not technically insufficient, it would... You know, an abuse of discretion is apparent when there's a reliance on a clear error of fact and that it would be an abuse of discretion in the second step. So my question was going back to the 23rd and the sufficiency of the evidence, because it wasn't disputed, was it, that the probation officer directed him to go directly to the treatment center and it was six hours or so later. And so why couldn't the district court have concluded from those facts that there had been a knowing noncompliance with direction to report? I think the way that the allegation is worded just says he failed to report on this day and that if he had gone in and been admitted, albeit at that late hour, there wouldn't necessarily have been a violation. But again, I think even if the evidence is sufficient, that it still falls back to an abuse of discretion as to the district court's, you know, uncertain grasp of the facts as to which days he was ordered to report versus not. I would just briefly like to speak to the Esparza condition and the requirement for back at the original sentencing. Esparza then came out later and showed those conditions to be plain error. And we would argue that to the extent the government argues that the district court's subsequent modification affects those conditions, it only does so as to the substance abuse and that no court, no judge has made the call that he must go to residential mental health treatment. Well, counsel, let me ask you a different question. Did your client admit the cocaine violation? Yes, he did, Your Honor. And so wouldn't that admission be enough to revoke? It would be. However, I think the case that the government relies on, Daniel, there's a footnote to that case that opinion was amended that says we're not remanding here. You know, so certainly it's within the discretion to revoke, but we're not remanding for resentencing in that particular case because the charge that was upheld was more serious. In this case, they were not. They were both grade C violations, correct? They were of the same grade. However, I don't think that was, I think, in the basis. I think here the failure to go to drug treatment was what was on the district court's mind versus one positive drug test. And I think it would be an extraordinarily harsh sanction to give someone nine months for that one positive, especially when the probation officer said at ER seven, he didn't start revocation proceedings after that one positive. That just proved that he needed to go to drug treatment. All right. Thank you, counsel. Good morning, Your Honors. May it please the court. Ian Ionello on behalf of the United States. And to address what Judge Rawlinson just asked, the district court's decision to revoke supervised release here wasn't based on an error. It was based on an admission by the defendant that he violated those terms of supervised release within four days of being released. Which terms? Well, the defendant admitted to allegation two. Which was the cocaine? Which was the cocaine use. What else did he admit to? Well, he admitted, he, well, I think that that admission shows that he violated those terms right away. I thought you said he, violations, plural, that he admitted violations, plural. Well, he admitted that violation. And I'm going to get to the, the allegation one in a minute, but I just want. Because he only admitted one violation. Right. He admitted one of the two allegations, which both of which were grade C. But I wanted to note that appellate has not cited any authority, not one case where this court has reversed an order revoking supervised release when a defendant has admitted one of the allegations, not one. So I submit to the court that based on appellate's admission alone, that the court's decision, discretionary decision to revoke supervised release is warranted. Now to address the, the comments and the, the argument about the February 23rd failure to enter into the residential facility, the facts and the evidence show that the, the probation officer instructed the defendant to show up at the facility at 9 a.m. He did, the defendant didn't do that. He checked himself into an urgent care facility and the probation officer received an 11 a.m. call from the nurse saying that the defendant was fine. He checked himself in and he was going to be released very shortly. She gave him bus fare to get to the residential facility and then the probation officer spoke with the defendant and said, go directly there. As Judge Settle mentioned, I think that the lapse in time between when defendant was instructed to leave the urgent care facility and when he purportedly arrived at the residential facility, which was around eight o'clock when the defendant called the probation officer and told him that he tried to check in, but he was not able to, so I think just those facts alone, viewing the evidence in light, most favorable to the government, shows that the defendant did violate allegation one as to February 23rd, which is, which supports the district court's factual finding. I also think that the other evidence that was, that was offered. The other side of that is that the trial court said, we don't have evidence of that counsel to attorney, um, Lacey's statement, the probation officer testified that he verified that Mr. Monroe went to urgent care. So if the record shows that the probation officer spoke to the nurse at the urgent care, doesn't that indicate that the trial court was an error in recalling that evidence at least? So your honor, that's a good question, but I would direct the court to the excerpts of record that would be 18 and what the, what actually transpired between the court and Ms. Lacey and Ms. Lacey opened the, her argument by saying, now the probation officer testified that on February 23rd, Mr. Monroe communicated with him that he had to go to the urgent care facility. And so the court said, we don't have any evidence of that counsel. We don't have any evidence of what you just told me. And I submit that there was no evidence showing that Mr. Monroe spoke to the probation officer before he had to go to the urgent care facility. So I think that the court, the crux of what the court was objecting to was that statement, even though the court does go on and it appears that he misunderstood the testimony concerning the conversation with the nurse. So that's, that was a mistaken view of the evidence. It was your honor, but I think that that doesn't really disturb the finding related to the 23rd, because if we look at all of the evidence presented, we show that the court instructed the defendant to, after the 23rd, attend or check himself in on the 25th, the defendant showed up intoxicated. The probation officer gave him a second, another chance. Those dates, I didn't think those dates were relevant. They were, they weren't alleged in the allegation, but I would submit that they would be relevant conduct and they would certainly be relevant for sentencing purposes. And so when the district court rendered sentence here, a guideline sentence, I would argue that that's justifiable and appropriate given that what the evidence that was presented from the court was that the defendant admitted one violation and that he repeatedly violated the other, the allegation one, even though certain of those allegations, the particular dates weren't included in the allegation. Counsel, may I ask you what conditions remained after the defendant was transferred from Las Vegas to Los Angeles? What conditions are still in effect? So your honor, I think as best as I can tell, and I think the district court's the most recent order by the district court incorporated all of the prior judgments. And so I think that because the most recent order included the standard conditions of release for the central district of California, those standard conditions apply. What about it didn't incorporate any of the Nevada conditions? Your honor, I think that that's because the Nevada order is referenced here and incorporated by reference. I think that the special conditions do apply, but I think that the January 2018 district court order, a judgment in the central district, the court superseded the special condition related to substance abuse. Okay. What about the mental health one? So I think that counsel cited a spronza for the, for the argument that it was an improper delegation of authority. Well, before we get there, what's the mental health condition superseded by the district court order in California? I think not necessarily superseded, but I think what the context of the condition is changed given the superseding special condition related to substance abuse. How has the context changed? Well, because a spronza, one, this is a, the court is reviewing this for plain error. And so what a spronza dealt with was a single condition related to sexual, sorry, one moment, sexual offender treatment program. And what the condition stated was that the probation officer could determine once that offender was released from his nearly 20 years incarceration was whether or not that the offender had to be placed in a residential facility or placed, or could get the sex offender treatment in an outpatient capacity. And the court reasoned that the nature and extent essentially of those between those two options, the level of confinement was too much of a discretion. It was an inappropriate delegation to the probation officer. Here, we don't have that issue because the district court has already said that the defendant is going to be placed in a residential substance abuse treatment and counseling program. And so I think when read in context with that special condition and with the Nevada special condition related to mental health treatment, all that special condition is now allowing the probation officer to do is determine whether or not the defendant is placed in a facility where he can receive both mental health and substance abuse treatment. And I submit that based on plain error review, that there's certainly no authority that says when certainly nothing that counsel cited or that I found where if the for certain conditions that it can't be that the district court can't leave it to the discretion of the probation officer to determine the scope and the level of or what types of programs the defendant receives while he's receiving that that residential treatment. Let me ask you, going back to the sentence, the sentence imposed was nine months. And your contention is that if the court were to find that only the illegal use of drugs was the basis for revocation and sentence, that the nine months was within the discretion of the court? Well, it was certainly within the discretion of the court because under the guidelines, the since both violations were our grade C, the guideline range of eight to 14 months would apply to either violation. But I, but I would also submit that because the district court heard evidence about multiple violations with respect to allegation one, the defendant repeatedly failed to enter into a residential program that even those dates that weren't listed in the actual allegation could be considered for sentencing purposes. And so even if there was an error about a particular date, the district court, there's certainly nothing in the record that would suggest that the defendant would have received a different sentence. And unless the court has further questions, I just did want to make one final note that although appellate only raises the sentencing challenge in his reply brief, I submit that the district courts appropriately and justifiably entered the guideline sentence. I know that the court focused on deterrence and protection of the public. The record before the court was quite clear that from an early age through the May 7th Mr. Monroe was in and out of prison for committing very violent crimes. He repeatedly violated his probation and his terms of release. All right, counsel. Thank you. You've exceeded your time. Rebotto, one minute. Thank you, your honor. I would just like to respond on the mental health treatment condition issue. The condition opposed by the district court here in the central district of California at PSR 24 is specifically geared to residential substance abuse treatment and counseling. And I don't think that mental health treatment can be shoehorned into that condition. Precisely on the record we see here, Phoenix House, which was the residential drug treatment center, found itself incapable of providing this sort of level of mental health treatment. And that's why there's this talk of the dual diagnosis center that handles both of them. And we're not arguing that that condition couldn't be imposed, but we're just arguing that residential, especially psychiatric treatment, is sufficiently different in kind than outpatient treatment, such that it goes to the nature and the district court rather than the probation officer who should make that call. Counsel, on plain error review, would it be reasonable for the court to subsume mental health treatment in the counseling when it says drug treatment and counseling? I don't believe so, your honor. Given the wording of the Nevada conditions, which specifically breaks out substance abuse treatment and mental health, the lack of discussion about mental health treatment once he arrived in the central district, and the reason for imposing that residential substance abuse treatment was positive drug tests. It didn't have to do with mental health treatment. So I don't think that can be inferred here. All right. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bea, Settle